Third case for our argument this morning is number 20-1694, Western Missouri, Gary Williams v. Unum Life. Mr. Blakeman? Good morning, your honors. This case, to me, is very clear. Kathy Williams fell down a set of stairs, and the only evidence that exists shows that she died as a result of intracranial hemorrhage. It turned out that she also had a high level of blood alcohol in her blood at the time. There is no evidence whatsoever that that alcohol caused or contributed to her death. The only evidence that exists shows she died of an intracranial hemorrhage. The Unum has conceded in its letter of denying the appeal that her death was the result of an accident. The court used the wrong standard because accidental death and dismemberment insurance is and has always been classified in the state of Maine, where Unum is registered, as a type of health insurance. It's specifically included within the definition of health insurance, and it is not included within the definition of any other type of insurance, and never has been. Therefore, the prohibition against discretion by a claims administrator applies, and they were not entitled to use discretion. But more importantly, even if they had been, there is no evidence upon which you could confirm the finding that alcohol contributed to Kathy's death. There are many, many cases that bear on this. Cyber-A was one important one, where the insured also fell down a set of stairs with a similar blood alcohol. I think it was actually higher. The court found the exclusion didn't apply because, as in this case, the basis upon which the claim was denied was a list of generic symptoms that may be caused as a result of somebody consuming too much alcohol. Not upon any evidence that it did, in this case, cause any of those symptoms. Excuse me, counsel. Is there a question of what the probable result of this case would be if a de novo standard was applied to the interpretation of this contract before us or not? That's one issue that we've raised, Your Honor. But we are also arguing that regardless of which standard you use, this claim should not have been denied. Is that something that we could do in the first instance, or is that something the district court ought to pass on? Well… Since you didn't get to that. Yes, I think it could be done by this court simply because there is no possible interpretation of what the administrator did in this case that should have resulted in the denial of the claim. Okay, thank you. Counsel, I want to ask you to go back to your statutory argument. You may be right in terms of how a carrier is defined, but in the statute you cite, it talks about offering or renewing a health plan. And then when there's a definition of health plan, and this, I think, is your big problem, which explicitly excludes accidental injury insurance. And so my problem is not so much with your definition of carrier. My problem is that that restriction doesn't apply because there's no health plan here. What's your response to that? And the definition is, I believe, in 4301-A, paragraph 7. Yes, Your Honor. This is not accidental injury insurance. The accidental injury insurance that you're referring to in that exception refers to a limited policy that only covers accidental injury. That's not what this is. Why isn't this closer to life insurance as opposed to health insurance? Well, Your Honor, it's not closer to life insurance because life insurance is an entirely different sort of insurance, which involves underwriting. It involves age underwriting. It involves medical condition underwriting. It involves difference between the two sexes. And it has quite a number of features, which we laid out in the appellant's opening brief, that are very, very different. And it has not ever been classified. The real reason is, it's never been classified that way. But the real, real reason is, the state of Maine defines this insurance specifically as a type of health insurance. It does not define it as life insurance. Let me follow up on that. That definition of a health plan also says financing or delivery of health care services. How does this plan or this insurance finance or deliver health care services? To be honest, it doesn't. Isn't that a problem? It's a problem with ambiguity in the statute. But it's not a problem because health insurance is specifically defined as including bodily injury, disablement, or death by accident or accidental means. That's always been the rule. But I think you're telling me, then, that even if that's true, this is not a carrier offering or renewing a health plan. Because it doesn't include the provision financing or delivery of health care services. Your Honor, there is an ambiguity there, I concede. However, UNAM has been a carrier in the state of Maine since 1996, although they implied that they weren't. And the definition of a carrier includes anyone who offers health care. UNAM has offered health care since 1996. This is defined as one type of provision that is part of health care. So, I cannot address the apparent ambiguity in the statute that doesn't mention this insurance as well as health care. But it is a type of insurance, and it's only sold by carriers that do health care insurance. Counselor, getting to the cause of death, under a de novo review by the carrier, why wouldn't it be logical to conclude that blood alcohol at the .33 level is sufficient to contribute to a death that likely involved a problem of physical stability and being able to negotiate a staircase? Let me make my position on that very, very clear. The cases do not support the idea that a separate cause such as a high blood alcohol or a stroke or anything of that nature contributed to the accident as opposed to contributing directly to the death. And there are numerous cases on this issue. They all say, and it goes all the way back to 1893 when Justice Taft, William Howard Taft, the president, when he was a justice, basically made it very, very clear that the fact that alcohol may have contributed to her falling down the stairs does not justify applying the exclusion. Unless the alcohol itself is found to have contributed to her death, and there's no evidence that it did whatsoever. It's pure speculation. What would this cause cover, this alcohol cause cover, if it didn't cover this kind of accident with just alcohol poisoning? Would that be about the only thing it would cover? Well, no, it's hard to say because there's a whole list of symptoms that it could have caused that are listed actually in one of the medical reports by UNAM, such as aspiration. No, I'm asking what does the alcohol related cause cover besides something like alcohol poisoning? Would that be the only thing? No, I think it could cause, in some cases, it could cause a cardiac dysrhythmia. It could cause the person to aspirate. It could even cause the heart to stop. If there was some evidence that it had done so, then we wouldn't be here. But there was no evidence. The only evidence was that banging her head on the side of the stairs, we assume that's how the intracranial hemorrhage occurred, was causing her death. I mean, if they had done an autopsy, maybe they would have found something, but they didn't, and there's no evidence. Why couldn't there be a reasonable inference raised that the alcohol level in her bloodstream indicated her being in a condition that caused her to fall? You know, I think we have to distinguish between a reasonable inference as to what might have occurred and substantial evidence as to what did occur. Because anybody might speculate, and certainly UNAM would speculate and did speculate, and the district judge also speculated, it's reasonable to assume that this might have contributed to her death. But we do not have a scintilla. We must have more than a scintilla. We don't even have a scintilla of evidence that it did do that. She was not an old woman. She'd been consuming alcohol for years. It hadn't caused her death so far. We don't have any evidence. And I believe the fundamental bedrock principle in this case is there must be some evidence to deny a claim. I think my time is running out, so... All right, you can reserve. Thank you. Thank you, Mr. Blakeman. Mr. Leopold? I think his mic is muted. Unmute your mic, Mr. Leopold. Still muted. You're still muted. I'm going to have to call back in. There you go. Okay, can you still hear me? We can hear you now. Okay, I apologize. As I was saying, we're all IT experts these days, unfortunately, and some of us are more expert than others. May it please the court, I'll get right to the main statutory interpretation issue, because I think it's an important issue in deciding this case. Maine has not... The Maine courts have not passed on this question that's before us, and I understand it, that the Eighth Circuit would probably like to decide this case on as narrow an interpretation as possible so that they don't interfere unduly with what Maine may do in the future. But the narrowest possible grounds to decide this case are, first, exactly what Judge Strauss mentioned, which is that 430311 applies to health plans. This is simply not a health plan. Judge Strauss noted the accidental injury language that appears in the definition of health plan, and that also, that same language appears in the exception to health insurance on which plaintiffs rely heavily. If you look at the actual plan language, the plan language says, the benefit will be paid only if an accidental bodily injury results in one or more of the covered losses listed below. And accidental bodily injury means bodily harm resulting from accident, independent of all other causes. The actual language of the policy makes clear that this is an accidental injury policy, and that's exactly what was contemplated when the Maine legislature put that exception into the statute. There's also a plaintiff at one point has tried to rely on 2847-V, which is a new statute that was enacted after this case was actually filed. It actually uses the term health insurance on which he relies. However, first of all, it doesn't apply retroactively, but also, the language of health insurance includes those exceptions for accidental injury only policies, and that's exactly what this is. 2847-V actually clawed back one of those exceptions. It said, well, this applies to health insurance, which includes disability policies. And I think that's exactly what Maine was trying to do, is trying to outlaw discretionary clauses in health insurance, traditional health insurance, and in long-term disability policies, and that's what it did. Accidental death is not a disability policy. It is not a health plan, and therefore, those statutory commandments that we can't have discretionary language don't apply to this plan. That's the narrowest interpretation of those statutes that you can take, and clearly shows that they don't apply to this case. And I can walk the court through 4303-11 exactly why, but as Judge Strass noted at the very top, it applies to health plans. It doesn't use the term health insurance. It doesn't use that term that plaintiffs rely on from earlier statutes. It's a subsection, basically, of health insurance. Health plans are defined as those that provide health care services. We cited a definition of health care services from a different chapter in the statute, which plaintiffs pointed out, and I agree that it is in a different chapter. However, it's not defined in the chapter that we use, and that's pretty good evidence of what a reasonable definition of health and care services is, and plaintiff candidly admits that, yeah, this plan doesn't provide health care services. So there's just simply no way that this plan is covered. It should be considered a health plan as Maine legislature has defined it. I would like to address the appellate's question, which isn't your obligation to actually produce some evidence as to what caused the decedent's death, as opposed to just making a logical assumption about how things normally go without actually putting something into evidence in this case to indicate that alcohol contributed to the decedent's death. Well, yes, Your Honor, and I think, you know, taken to its logical conclusion, basically plaintiffs argue that the alcohol exclusion shouldn't apply unless it's a witness to death, and everybody knows exactly what happened. We do have evidence here, and we have more than a scintilla of evidence to support this definition. We have the opinions of medical experts. She had a markedly elevated blood alcohol level at the time. The crime scene circumstances, which were looked at by the Independence Police Department, indicate that a fall happened. She had broken glass. You know, it looked like she was carrying a glass. It may have been containing alcohol. It may have been something else or empty, but she fell down the stairs unexpectedly. The medical experts that Unum retained to look at this case said she had some blood coming out of her nose at the bottom of the stairs, and they said when that happens, they assume that there was an intracranial hemorrhage that caused her death, but they said, you know, it could have been that she knocked her nose on the way down and just had a bloody nose. Again, there was no autopsy performed by the Independence Police Department to confirm that. That was just an assumed cause of death, and what our experts said is, look, under these circumstances where she was highly intoxicated, she fell down the stairs. She clearly knocked her head in some manner and was found at the bottom of the stairs. There are two ways that alcohol could have contributed to this death. One is the kind of more obvious one, which is that she would have been unstable on her feet and probably fell down the stairs accidentally, causing her death. My question, I think you helped me clarify it. Is it your responsibility to establish that alcohol could have contributed or that alcohol did contribute to the decedent's death? Well, I think that we have to provide evidence of more than a scintilla but less than a preponderance, so we don't have to reach the normal civil preponderance standard of whether alcohol caused the death, right? So if this were a normal civil case, a judge would say, well, this is a fact issue. Let's send it to a jury. We don't know exactly what happened, but this is not a normal civil case. We're reviewing the fact-finding decisions of UNAM, which are supported by more than a scintilla of evidence. And I think that you have to look at the Prelutsky case and the Carrier case, the two cases that we cited, neither of which was from the Eighth Circuit, but both are appellate court decisions, and they're markedly similar to this. I mean, we can make medical inferences from the evidence that's before us. Very rarely will a contested death be witnessed, and we'll have all the facts, and we'll know 100 percent to a beyond-reasonable-doubt standard or anything like that. What we have is a best guess. And quite frankly, the evidence supports our conclusion more than it supports the conclusion that alcohol had nothing to do with it. I mean, it's just obvious from the circumstances. One other thing I wanted to point out is that the medical experts that UNAM retained said that there was another way alcohol could have contributed to this death, which is that maybe she fell down the steps and had a head injury, but the extreme alcohol intoxication also affects your body's ability at respiration and circulation, and perhaps she would have survived that fall if she hadn't been so markedly intoxicated. But because of the high level of intoxication, her circulation and respiration were depressed, and that caused her death. So there's more than one way that this could have caused or contributed to this death. I think turning back to the statutory interpretation issue, too, I think it's very clear that the main legislature, what it intended to do. Plano cited quite a bit of language from testimony from a UNAM witness before these exceptions were put into main law, and to the extent it matters, it went on for a couple of pages. He talked about UNAM testifying before the main legislature that they were concerned that this health insurance definition was so broad that it could encompass all these other forms of insurance that were not necessarily meant to be encompassed by the term health insurance. And so it sought to get that very exception language put in so these non-health plans don't accidentally get caught up in the definition of health insurance. Well, that's exactly what it did. It carved out accidental injury policies. This is, by the terms of the policy, an accidental injury policy. That's exactly what this exception was supposed to address, and that's what it does address. And again, though, he relies heavily on the definition of health insurance. Health insurance doesn't appear in 4303-11, that statute. It only talks in terms of health plans, which it defines separately. So health plans are a subset of health insurance, and as he conceded, this is not a health plan. There was another suggestion during the administrative appeal that Ms. Williams was suffering from some other, that it could have been vertigo or drug side effects that contributed to her loss of balance. But there is also an exclusion in the policy for deaths caused or contributed to by disease of the body or diagnostic medical or surgical treatment. So it would encompass sort of those theories of how she died as well and would not be a covered claim. And finally, I just point out in the district court, the plaintiff in their briefing conceded that Unum had substantial evidence to support that alcohol contributed to this loss. That is a direct quote from their brief. The only thing they challenged was that if this court reviewed the case on de novo review, that they argued Unum could not meet that standard, which is a wholly separate issue. Put your citation to the brief at that point. I apologize. I should have written this down. If you don't have it, go ahead and proceed with your argument. Yeah, I apologize. If the quote is reasonable to conclude that the alcohol intoxication contributed to the loss, that is a direct quote from the district court briefing of the plaintiff. And there is a side in our brief. I just can't locate it right now. And I apologize. To your question earlier, Judge Smith, if the court were to conclude that de novo review should apply, I think it would be appropriate for you to remand to the district court. Or maybe it was Judge Arnold. I can't remember whose question it was. It would be appropriate for you to remand to the district court to consider under that standard. But again, we don't think that's necessary. And unless there are any other questions, I don't I don't think I have any further argument. Thank you, Mr. Leopold. Mr. Blakeman, you are rebuttal. Yes, you are. I'd like to take those points in reverse order. First of all, we never conceded ever in any document that. Kathy Williams alcohol contributed to her loss. It may have contributed to the fall. That's possible. But to her death, there is no evidence. Even if we had, even if my co-counsel in district court had said that, it would have been correct. It doesn't amount to a legal concession. But he never did. He never said it. They characterized what he did say as a as having conceded. The only concession that's ever made in this case is Unum's concession that this death was an accident. That's the only concession. So their failure to find the citation is not coincidental because there is no citation. Secondly, they are insisting that this is an accidental injury policy. If if you read the policy, if you read the title of the policy, if you read anything about the policy, you will know it's not an accidental injury policy. The exception in 7024A 7042 relates to a policy that pays limited amounts of money for an accidental injury, usually an on-the-job injury. It has nothing to do with accidental death. It has nothing to do with dismemberment. It is not this policy. And in fact, the testimony of who the person they called a witness, he actually was an officer of the company. In support of that, made it very clear that he was just talking about very limited pay policies such as specified disease, hospital indemnity, dental, vision, disability, income, and long-term care. If that had been the case, then section subsection one would have been amended to get rid of the term disablement or death by accident or accidental means. All they had to do was take it out of it. They didn't need an exception. All they needed to do was take that language out of 704.1 or 704. I'm not sure whether it's subdivision one or point one, but that it's just a dishonest argument. The opinion that was referred to as establishing somehow that accidental, that intoxication can result from a... Mr. Blakeman, your time's expired. I'm sorry. That's all right. Court wishes to thank both counsel, Mr. Blakeman and Mr. Leopold for your presence in our virtual hearing today. And we also will continue to review the briefing that you've submitted and render a decision in due course. Thank you, counsel. Thank you so much.